# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| OLADAYO ADELEKE OLADOKUN, | : | |
| --- | --- | --- |
| Plaintiff, | : | Civil Action No.: 13-00358 (RC) |
| v. | : | Re Document Nos.: 7, 14, 17 |
| CORRECTIONAL TREATMENT FACILITY, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION TO AMEND AND DENYING AS MOOT ALL OTHER PENDING MOTIONS

## I. INTRODUCTION

This matter is before the Court on plaintiff's "The Amend Motion Regarding Original Complaint Before the Court," which the Court interprets as a motion to amend the complaint. *See* ECF No. 17.[1] Defendant, Corrections Corporation of America, has opposed the motion. *See* ECF No. 21.[2] For the reasons discussed below, plaintiff's motion to amend will be granted.

## II. FACTUAL BACKGROUND

Plaintiff, who is proceeding *pro se* in this action, was a federal pretrial detainee that was held, by virtue of a contract between the USMS and the District of Columbia Department of Corrections ("DOC"), at the Correctional Treatment Facility ("CTF"), which is operated for

---

[1] The United States Marshals Service ("USMS") had previously filed a motion to dismiss. ECF No. 14. But plaintiff appears to have voluntarily dismissed the USMS from this case. ECF Nos. 17, 18. As such, that motion is denied as moot.

[2] The defendants had previously moved to dismiss. *See* ECF No. 7. Because the Court will grant the plaintiff's motion to amend, defendants' motion becomes moot. However, because the amended complaint does not resolve some of the issues raised in defendants' prior-filed motion to dismiss, the Court addresses those issues below.

DOC by the Corrections Corporation of America ("CCA"). Plaintiff's original complaint filed in Superior Court, in its entirety, alleged the following: The defendants failed to give plaintiff proper care while in their custody. *See* ECF No. 6, Attach. 1 at 7. On August 11, 2010, Chief Magistrate Judge William Connelly in the District of Maryland, ordered the USMS, or its contracting agencies, because of plaintiff's then-recent surgery on his right hand, to have plaintiff promptly receive an evaluation by an appropriate health care provider and receive care and treatment consistent with the standard of care for the condition revealed by the evaluation.[3] Plaintiff alleged that his custodians, USMS, CCA, CTF, and DOC were negligent[4] for failure to provide him proper medical care for his surgically repaired broken hand. *See* ECF No. 1, Ex. 2. The USMS removed the case to this Court, *see* ECF No. 1, and subsequently moved to dismiss the claims against it. *See* ECF No. 14. DC, DOC, and CTF/CCA, have also moved to dismiss the claims against them. *See* ECF No. 7.

On April 8, 2013, the plaintiff filed a "Motion to Amend the Original Complaint Before this Court." ECF No. 8. DC, DOC, and CTF/CCA, opposed the motion. ECF No. 9. The Court, treating the pleading as a motion because of its caption, granted the motion and ordered plaintiff to file his amended complaint by May 17, 2013. No such amended complaint was filed by that date. As such, on August 19, 2013, the Court ordered plaintiff to respond to the pending motions to dismiss, amend his complaint, or move for an extension, by September 19, 2013. ECF No. 16. In retrospect, the Court believes that *pro se* plaintiff intended the "motion" to be

---

[3] *See* Order for Medical Evaluation and Appropriate Treatment of Detainee, *United States v. Oladokun*, 10-mj-2899 (D. Md. August 11, 2010), ECF No. 5.

[4] At various points, plaintiff has alleged that defendants were negligent. *See also* Second Notice Pursuant to D.C. Code § 12-309 (June 14, 2012), ECF No. 6, Attach. 1 at 81. But plaintiff has characterized his claims as based on the constitution, not as common law torts. Accordingly, the Court interprets plaintiff's amended complaint as only raising constitutional claims.

his amended complaint. On September 10, 2013, the *pro se* plaintiff filed another pleading captioned "The Amend Motion Regarding Original Complaint Before This Court." ECF No. 17. The Court will deem this pleading as plaintiff's proposed amended complaint ("Compl.").

In what the Court deems as plaintiff's proposed amended complaint, plaintiff alleges the following: Plaintiff received reconstructive surgery on his broken right hand at Howard University in 2009. Compl. at 2. Because the hand did not heal properly, a second surgery was performed on August 4, 2010. *Id.* The surgeon ordered an aggressive regimen of physical therapy. *Id.* Unfortunately for plaintiff, he was arrested shortly thereafter and was detained pending trial. *Id.* Although plaintiff was ordered into the custody of the USMS, (due to a contractual arrangement between the USMS and the DOC), he was processed at the D.C. Jail and transferred to the CTF (which is operated by CCA as part of a contractual arrangement with DOC). *Id.* The Magistrate Judge who ordered plaintiff's detention issued a "Medical Red Alert" due to the large cast and bandage on plaintiff's right hand. *Id.*

While held at the CTF, plaintiff claims he was not given proper care for an entire year. Compl. at 3. For example, he claims that he was not given pain medicine for the hand and that his stitches were not taken out on time. *Id.* Because the cast and bandages were kept on for too long, plaintiff claims the bandages reeked of a foul odor. *Id.* After a delay, plaintiff was finally able to see an orthopedic doctor, who turned out to be the same surgeon who performed his previous two procedures, Dr. Antwang. *Id.* Dr. Antwang again, ordered extensive physical therapy, four to five times a week, in order for plaintiff's hand to properly function. *Id.* During a follow-up visit with Dr. Antwang three or four weeks later, the doctor inquired why plaintiff had not received the physical therapy he had ordered. *Id.* The CTF staff assured Dr. Antwang that plaintiff would be scheduled for physical therapy. *Id.*

Although plaintiff was, apparently, taken to a room in the CTF to receive physical therapy, he claims that on most occasions, he simply waited for hours, or sometimes for a whole day, without seeing a therapist. *Id.* Although on some occasions plaintiff did see a therapist, on many scheduled days he would not be removed from his housing unit while the therapist unsuccessfully waited for plaintiff in the medical unit.[5] *Id.*

In his amended complaint, plaintiff characterizes the defendants' alleged failure to provide him proper medical care as violation of his constitutional right embodied in the Eighth and Fourteenth Amendments. Compl. at 5-7. Plaintiff claims that defendants were deliberately indifferent to his serious medical needs. *Id.*[6] Plaintiff alleges that, while initially incarcerated, he explained to every staff member that he came in contact with that his cast had to come off within that same week and that he required extensive physical therapy. Compl. at 2. He further alleges that after his follow-up visit with Dr. Antwang, Dr. Antwang inquired of CTF staff why plaintiff had not received the physical therapy he had ordered and was assured that plaintiff would be scheduled for such therapy. *Id.* at 3. And plaintiff also alleges that, while in custody at CTF, he filed several grievance complaints regarding the failure to provide proper medical care, but such grievances were ignored. *Id.* at 3-4. In fact, plaintiff attached one such grievance to the materials filed in Superior Court in which he complained about the failure to receive physical therapy. ECF No. 6, Attach. 1 at 85-86.

Defendant CCA has opposed plaintiff's motion to amend. *See* Defendant CCA's Response to Plaintiff's Amend Motion Regarding Original Complaint ("Opposition" or "Opp."),

---

[5] Although the medical care is provided to inmates by Unity Health Care, Inc., plaintiff does not bring a claim against it because he has concluded that Unity's staff "attempted to provide the necessary medical care" to him. Compl. at 4.

[6] In this pleading, plaintiff also requests that the USMS be dropped as a defendant in this matter, Compl. at 4, which the court treats as a voluntary dismissal of all claims against the USMS.

ECF No. 21. Defendants make three arguments in opposition. First, defendant CCA suggests that it cannot be held liable for failure to provide appropriate medical care because it does not provide medical care—Unity Healthcare does. Opp. at 2. Next, CCA argues that, as a private entity, no constitutional claim may be asserted against it. *Id.* Finally, defendant CCA argues that amendment would be futile because plaintiff fails to state a claim for deliberate indifference. *Id.* at 3. Each of these arguments is addressed below. Moreover, because plaintiff's proposed amended complaint does not resolve all of the issues set out in defendants' original motion to dismiss, those arguments are addressed first.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Amend Under Rule 15

Pursuant to Rule 15, "[a] party may amend its pleading once as a matter of course within 21 days after serving it . . . ." FED. R. CIV. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15 allows courts to freely grant leave to amend a complaint "when justice so requires." *See id.* District courts, however, have discretion to deny leave to amend a complaint for reasons such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice on the opposing party, or futility of amendment. *See Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With respect to an amendment being futile, "a district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir.1996) ("Courts may deny a motion to amend a complaint

as futile . . . if the proposed claim would not survive a motion to dismiss."). Therefore, in assessing an argument that an amendment would be futile, the court must assess the proposed amendments under the same standard as would be applied to a motion to dismiss.

All that the Federal Rules of Civil Procedure require of a complaint is that it contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. FED. R. CIV. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Id.* A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must the court presume the veracity of legal conclusions that are couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And, although a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by

lawyers," *Erickson,* 551 U.S. at 94, it too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

### B. Defendants' Prior Motion to Dismiss

Because the Court will grant plaintiff's motion to amend, defendants' prior motion to dismiss essentially becomes moot. But because plaintiff's proposed amended complaint does not address all of the issues raised by defendants in that motion, the Court addresses them here.

#### 1. Department of Corrections as Separate Defendant

The D.C. Department of Corrections has argued that, as a separate agency within the executive branch of the District government, it is *non sui juris* and cannot be sued as a separate entity because it does not have the capacity to be sued. Defs.' Mot. to Dismiss 3, ECF No. 7. In his amended complaint, plaintiff seems to continue to seek damages against the Department of Corrections. Compl. at 5. But defendants are correct that the Department of Corrections cannot be sued separately from the District of Columbia. *See, e.g.*, *Carter-El v. D.C. Dep't of Corrections*, 893 F. Supp. 2d 243, 247 (D.D.C. 2012), *aff'd*, No. 12-5357, 2013 WL 3367416 (D.C. Cir. July 5, 2013); *Ennis v. Lott*, 589 F. Supp. 2d 33, 37 (D.D.C. 2008); *Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997). Accordingly, the Department of Corrections is dismissed as a defendant and plaintiff must pursue claims against the District government solely against the District of Columbia which has already been named as a defendant.

#### 2. Compliance with the Notice Requirement of D.C. Code § 12-309

The District of Columbia has further argued that the District must be dismissed as a defendant because plaintiff failed to comply with the strict notice requirements of D.C. CODE § 12-309. Defs.' Mot. to Dismiss at 4. However, as set forth above, plaintiff has characterized

7

his claims as brought under the Constitution. Construing *pro se* plaintiff's claims liberally as the Court must, *see Haines v. Kerner,* 404 U.S. 519, 520–21 (1972), the Court construes plaintiff's claims as constitutional claims brought against a municipality and its contractor pursuant to 42 U.S.C. § 1983. As such, because the six-month requirement of D.C. CODE § 12-309 does not apply to claims brought under section 1983, the District's argument fails. *See Daskalea v. District of Columbia*, 227 F.3d 433, 446 (D.C. Cir. 2000).[7]

### 3. Failure to State a Claim

The defendants' motion to dismiss also argues that plaintiff has failed to state a claim upon which relief may be granted because the complaint fails to include specific factual allegations sufficient to put each defendant on notice of any claim against it. Defs.' Mot. to Dismiss at 5. But that argument was based on plaintiff's original sparse complaint. Because plaintiff has since amended his complaint to provide far more specificity, this argument has been superceded and is, thus, moot.

### C. CCA's Opposition to Motion to Plaintiff's Amend

As set forth above, CCA has opposed plaintiff's motion to amend. In that opposition, CCA: (1) suggests that it cannot be held liable for failure to provide appropriate medical care because it does not provide medical care, Unity Healthcare does; (2) argues that, as a private entity, no constitutional claim may be asserted against it; and, (3) argues that amendment would

---

[7] The Court notes that, regardless, at least a portion of plaintiff's claims would fall within the six month period preceding the date he claims he submitted the notice required by the statute. Plaintiff has submitted a letter dated June 20, 2011 which he claims he submitted pursuant to D.C. CODE § 12-309. *See* ECF No. 6, Attach. 1 at 83. The letter appears to have been sent while plaintiff was still held at the CTF. *Id.* Thus, because plaintiff has claimed that he was denied appropriate medical care throughout his incarceration at the CTF, clearly, at least a portion of his claims are timely under the statute. Regardless, at this time, this issue is irrelevant unless plaintiff subsequently pursues common law tort claims against the District.

be futile because plaintiff fails to state a claim for deliberate indifference. For the reasons set forth below, each of these arguments fail.

1. Standard for a Deliberate Indifference Claim

In his amended complaint, plaintiff characterizes the defendants' alleged failure to provide him proper medical care as a violation of his constitutional right embodied in the Eighth and Fourteenth Amendments.[8] Compl. at 5-7. Plaintiff claims that defendants were deliberately indifferent to his serious medical needs. *Id.* The standards for such a claim are set forth below.

In *Estelle v. Gamble*, the Supreme Court set forth the standards for inmates claiming a lack of adequate medical care. 429 U.S. 97 (1976). In that case, the Supreme Court held that "deliberate indifference to serious[9] medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoners' needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering

---

[8] Because plaintiff was a pretrial detainee, his custody was not punishment and, as such, the Eighth Amendment did not apply. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("In the case of a person being held prior to trial, however, 'the cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply,' because 'as a pre-trial detainee [the plaintiff is] not being 'punished.' Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if held in state custody.")(internal citations omitted); *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991)("pretrial detainees must rely upon the Fifth Amendment's guarantee of due process, where the convicted plaintiffs must ground their claims upon the Eighth Amendment's ban on cruel and unusual punishment"). And, although the Due Process Clause did apply to him as a pretrial detainee, because plaintiff brings claims against the District of Columbia, it is the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, that would have applied to him. *Brogsdale*, 926 F.2d at 1187. Thus, the Court liberally construes plaintiff's claims of deliberate indifference to his serious medical needs as having been brought pursuant to the Due Process Clause of the Fifth Amendment.

[9] CCA has not argued that plaintiff's medical needs are not serious. But the Court notes that "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104-05 (internal citations omitted). But "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*. at 106.[10]

The Supreme Court further elucidated what was required for a deliberate indifference claim in *Farmer v. Brennan*, 511 U.S. 825 (1994). In that case, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Under the test adopted by the Court, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a

---

[10] As set forth above, as a pretrial detainee, the plaintiff's claims are based on the Due Process Clause of the Fifth Amendment, rather than the proscription against cruel and unusual punishment set forth in the Eighth Amendment. But, because the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner, at a minimum, defendants must meet the deliberate indifference standard set forth in *Estelle v. Gamble*. *Monmouth Co. Corr. Inst. Inmates*, 834 F.2d at 346 n.31.

substantial risk of serious harm." *Id.* at 842. As such, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

2. CCA's Arguments

In its Opposition, CCA: (1) suggests that it cannot be held liable for failure to provide appropriate medical care because it does not provide medical care, Unity Healthcare does; (2) argues that, as a private entity, no constitutional claim may be asserted against it; and (3) argues that amendment would be futile because plaintiff fails to state a claim for deliberate indifference. Each of these arguments is addressed in turn.

*a. CCA Does Not Have To Provide Medical Care to Be Found Liable*

In its Opposition, CCA suggests that it cannot be held liable for failure to provide appropriate medical care because it does not provide medical care, Unity Healthcare does. Opp. at 2. But this suggestion misapprehends the relevant Supreme Court precedent.

As the Supreme Court made clear in *Estelle*, a claim for deliberate indifference to serious medical needs of prisoners can be made regardless of "whether the indifference is manifested by prison doctors in their response to the prisoners' needs or by *prison guards* in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (emphasis added); *see also Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (deliberate indifference is demonstrated when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment). In this case, plaintiff specifically alleges that prison officials at CTF intentionally denied, delayed,

11

or interfered with the physical therapy regimen prescribed by his physicians. In fact, he alleges that the therapists sat in a room waiting for him but the prison officials prevented him from leaving his housing unit. At this stage of the litigation, amendment on this issue would not be futile.

### b. Despite Being a Private Entity, CCA Could Be Held Liable Pursuant to 42 U.S.C. § 1983

Next, CAA argues that, as a private entity, no constitutional claims could be asserted against it. CCA's argument is based on cases and analysis presuming that plaintiff's claims are premised on a theory of liability under *Bivens*. Opp. at 2-3. But as set forth above, the Court interprets plaintiff's claims as being pursued against the District of Columbia and the contractor that operates its prison treatment facility as being brought pursuant to 42 U.S.C. § 1983. Under these circumstances, courts have allowed claims against private prison operators like CCA. *See, e.g.*, *Smith v. Corrections Corp. of America*, 674 F. Supp. 2d 201 (D.D.C. 2009); *Gabriel v. Corrections Corp. of America*, 211 F. Supp. 2d 132 (D.D.C. 2002). As such, CCA's argument fails.

### c. Plaintiff's Amendments Are Not Futile

Finally, CCA argues that plaintiff's deliberate indifference claim fails because he has not alleged: (1) that his alleged injuries were caused by an official policy or custom of CCA[11] or (2) that a specific CCA employee knew of and consciously disregarded a substantial risk to his health or safety causing his alleged injuries. Opp. at 3-4. But plaintiff's claims in this case are similar to those that were allowed to proceed in *Smith*, 674 F. Supp. 2d at 206-07 (allowing

---

[11] As a private entity, it is not certain that CCA can rely upon the custom or practice requirement applied to 42 U.S.C. § 1983 claims against municipalities in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But many courts have adopted the custom or policy requirement when adjudicating § 1983 claims against private entities and the Court will do so here. *See Jordan v. District of Columbia*, No. 11-1642(RC), 2013 WL 2458282, at *5 (D.D.C. June 7, 2013).

deliberate indifference claims to proceed where inmate pleaded: that he had repeatedly requested medical treatment and made complaints and grievances to CCA [and thus, CCA knew of supposedly unconstitutional medical care]; that CCA failed to take reasonable actions to ensure that systemic problems were addressed; coupled with the absence of any indication that the inmate's medical treatment improved during his incarceration, plausibly suggested that CCA failed to act in the face of its employees allegedly unconstitutional behavior); *see also Durmer v. O'Carroll*, 991 F.2d 64, 67-69 (3d Cir. 1993) (inmate states viable claim, if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, where he spent months in the prison system without receiving the physical therapy prescribed by his pre-incarceration physician, despite his repeated notification to the authorities of his deteriorating condition and his need for immediate therapy); *Williams v. Feinerman*, No. 11-448-GPM, 2012 WL 1855172, at *3 (S.D. Ill. May 21, 2012) ("Where a prison doctor is aware of express post-operative instructions regarding physical therapy for finger, but deliberately disregards them, a fact-finder may conclude that the doctor had sufficient knowledge of the risk of harm to sustain a deliberate indifference claim."). Thus, similarly, this Court determines that CCA has not demonstrated that allowing plaintiff to amend his complaint would be futile.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion to amend (ECF No. 17) is granted. The pleading docketed as ECF No. 17 shall be deemed his amended complaint. And defendants shall have 30 days from the date of the order to respond to the amended complaint. All other pending motions (ECF Nos. 7, 14) are denied as moot. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 22, 2013                                          RUDOLPH CONTRERAS
                                                                  United States District Judge